**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
NATIONAL INSTITUTE OF                       )
MILITARY JUSTICE,                           )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )        Civil Action No. 04-312 (RBW)
                                            )
U.S. DEPARTMENT OF DEFENSE,                 )
                                            )
        Defendant.                          )
_____    )

## <u>MEMORANDUM OPINION</u>

The plaintiff has filed this lawsuit alleging that the defendant impermissibly withheld

documents requested pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552

(2000). Complaint ("Compl.") ¶ 1. Currently before the Court are the parties' cross-motions for

summary judgment.[1] For the reasons set forth below, this Court grants in part, and denies in part,

both parties' motions.

## I.   <u>Background</u>

The facts in this case are not largely in dispute and are the following. On November 13,

2001, the President of the United States issued a Military Order authorizing the establishment of

military commissions to try suspected terrorists. Pl.'s Mem. at 3 (citing 66 Fed. Reg. 57,833

_____

[1] The following papers have been submitted in connection with these motions: (1) Memorandum of Points
and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (2) Plaintiff's
Memorandum in Opposition to Defendant's Second Motion for Summary Judgment and in Support of Plaintiff's
Second Cross-Motion for Summary Judgment ("Pl.'s Mem."); (3) Reply to Plaintiff's Opposition to Defendant's
Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion for Summary Judgment ("Def.'s Opp'n");
and (4) Plaintiff's Reply to Defendant's Opposition to Plaintiff's Second Cross Motion for Summary Judgment
("Pl.'s Reply").

(Nov. 16, 2001)).  Section 4 of this Order directed the Secretary of the Department of Defense

("Secretary") to issue regulations to implement the President's Military Order.  Id.  Pursuant to

this provision, the Secretary began the process of promulgating regulations to establish the

military commissions.  And, on July 1, 2003, the Secretary published in the federal register the

final rules establishing the procedures for conducting the military commissions.  Id. (citing 68

Fed. Reg. 39,374 (July 1, 2003)).  According to the plaintiff, the Department of Defense ("DoD"),

during the internal drafting process of the regulations, received comments and advice from non-

agency attorneys and the general public on the draft regulations.  Id. at 3-4.  These comments form

the basis of the plaintiff's FOIA request that is at issue in this case.

        The plaintiff, the National Institute for Military Justice ("NIMJ"), is a nonprofit

corporation that provides information to the public about military justice.  Compl. ¶ 3.  On

October 3, 2003, the plaintiff submitted a request pursuant to the FOIA for

>   all written or electronic communications that the Department (including the Secretary and
>   General Counsel) has either sent to or received from anyone (other than an officer or an
>   employee of the United States acting in the course of his or her official duties) regarding
>   the President's November 13, 2001 Military Order, the Secretary's Military Commission
>   Orders, and the Military Commission Instructions.  This requests includes but is not
>   limited to suggestions or comments on potential, proposed, or actual terms of any of those
>   Orders or Instructions and any similar, subsequent, superseding or related Orders or
>   Instructions, whether proposed or adopted.

Compl. ¶ 5.  Upon receipt of the plaintiff's FOIA request, the defendant directed it to two offices

of the Secretary likely to have documents responsive to the request — (1) the Correspondence and

Directives Division of a support organization, the Washington Headquarters Services, and (2) the

Office of the General Counsel.  Def.'s Mem. at 2.  The search in the Office of the General

Counsel was focused primarily in the Office of Military Commissions and the Office of the

Deputy General Counsel.  Id.  On November 18, 2003, the defendant made an "interim" response to the plaintiff's request that resulted in the release of some, but not all, of the requested documents.[2]  Compl. ¶ 6.  The plaintiff administratively appealed the defendant's response, id. ¶ 7, and on February 26, 2004, after the defendant failed to timely respond to the appeal, id. ¶ 8, the plaintiff commenced the action that is presently before this Court.  After an initial round of summary-judgment briefing in this case commenced, the defendant undertook a new search for responsive documents.  Def.'s Mem. at 3.  This new search was conducted in more offices than the previous search and used different search criteria, which resulted in a much broader search for responsive documents.  Id.  Specifically, this expanded search included searches of:  (1) the files of the Legal Counsel; (2) the correspondence files of the General Counsel; (3) the files of the Deputy Secretary of Defense; (4) the files of the Under Secretary of Defense for Policy; (5) the files of the Office of Detainee Affairs; and (6) the files of the Office of Public Inquiries and Analysis.  Id. at 3.  Moreover, former employees were contacted who might have knowledge of the location of potentially responsive documents.  Id.  This search resulted in the discovery of thousands of pages of responsive documents, which, to the extent the defendant claims is permissible under the FOIA, have been released.  Id. at 4.

On March 9, 2005, the defendant filed a second motion for summary judgment along with an index produced pursuant to Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973), which provides the defendant's justifications for withholding all or part of 87 documents.  Def.'s Mem., Ex. 11 (Vaughn index).  In the papers currently before the Court, the defendant contends that it

---

[2]  Additional documents from this initial search were released on June 4, 2004, following the commencement of this action.  Def.'s Mem. at 3.

has properly withheld all or part of these documents pursuant to FOIA exemptions (b)(3), (b)(5), and (b)(6), and that its search was adequate to discover all responsive documents.  Id. at 4-6.  Accordingly, the defendant argues that it is entitled to summary judgment.  The plaintiff, however, contends that the defendant's search was not adequate, and that many of the documents that were discovered have been improperly withheld under exceptions (b)(3) and (b)(5).  Pl.'s Mem. at 1-2.

## II.    Standard of Review

### (A)    Federal Rule of Civil Procedure 56(c)

This Court will grant a motion for summary judgment under Rule 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party.  VoteHemp, Inc. v. Drug Enforcement Admin., 237 F. Supp. 2d 55, 59 (D.D.C. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  However, the non-moving party cannot rely on "mere allegations or denials . . . but . . .  must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted); see also Fisher v. Nat'l Institutes of Health, 934 F. Supp. 464, 467-68 (D.D.C. 1996) (quoting Anderson, 477 U.S. at 248).

### (B)    Summary Judgment in FOIA Cases

The "'burden is on the agency' to show that the requested material falls within a FOIA exemption." Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (quoting 5 U.S.C. § 552(a)(4)(B)).  Agencies typically submit affidavits and a Vaughn index to

4

satisfy this burden, which sets forth a description of each withheld document, the exemption

claimed for withholding the document, and reasons supporting the application of the exemption to

the withheld material.  Vaughn, 484 F.2d at 827; King v. Dep't of Justice, 830 F.2d 210, 219

(D.C. Cir. 1987); Weisberg v. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  This index

must be sufficiently detailed to allow a court to determine whether the claimed exemptions apply

to the withheld documents.  Oglesby v. U.S. Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996).

Moreover, a court may rely on affidavits provided by an agency in granting summary judgment "if

the affidavits describe the documents and the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor by evidence of

agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  These

statements by the agency "cannot support summary judgment if they are 'conclusory, merely

reciting statutory standards, or if they are too vague or sweeping.'"  King, 830 F.2d at 219

(citations omitted).  While the District of Columbia Circuit has not defined what constitutes a

conclusory statement, it has concluded that "where no factual support is provided for

an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt."

Senate of the Commonwealth of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir.

1987) (emphasis in original).  In addition, "[w]hile an agency's affidavits are presumed to be in

good faith, a plaintiff can rebut this presumption with evidence of bad faith."  Gutman v. Dep't of

Justice, 238 F. Supp. 2d 284, 290 (D.D.C. 2003).  Thus, to determine whether a court should grant

summary judgment in a FOIA action, the court must determine whether undisputed material facts,

as shown by exhibits, affidavits, and/or the Vaughn index, show that each requested document has

5

been produced, is unidentifiable, or is exempt from disclosure.  Students Against Genocide v.

Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. Dep't of Justice, 627 F.2d 365,

368 (D.C. Cir. 1980).

As already noted, the defendant contends that it has properly withheld responsive

documents pursuant to FOIA exemptions (b)(3), (b)(5), and (b)(6), and that its search was

adequate.  Def.'s Mem. at 4.  On the other hand, the plaintiff takes exception to each of the

defendant's positions.[3]  Pl.'a Mem. at 1-2.  The Court will address the plaintiff's challenges in

turn.

### III.   Legal Analysis

**(A)    The Defendant's Search**

The plaintiff first argues that its "FOIA request has been infected by either bad faith or

incompetence" and thus, the defendant has a heavier burden to carry in establishing that it has

complied with the requirements of the FOIA.  Pl.'s Mem. at 11.  The plaintiff advances two

examples to illustrate this point.  First, the plaintiff opines that the defendant failed to initially

include comments from non-agency lawyers as responsive to its FOIA request.  Id.  The plaintiff

suggests that this was inexcusable, and cannot simply be attributed to inadvertence or oversight,

since those documents were clearly responsive to its request.  Id.  As support for its position, the

plaintiff directs the Court to the acknowledgment and praise made by the Secretary at a press

conference concerning the advice and comments provided by these attorneys.  Id. at 12.

According to the plaintiff, the defendant's failure to produce these documents demonstrates an

---

[3]  The plaintiff does not, however, challenge the defendant's withholding of documents pursuant to exemption (b)(6), Pl.'s Mem. at 2 & n.7.  Accordingly, the Court need not address whether it was proper to withhold those documents under this exemption.

"indifference to the commands of FOIA," and shows that the delay in the release of these documents is indefensible.  Id. at 13-14.  Second, the plaintiff posits that there are inconsistencies between the defendant's decision to release certain documents while failing to release others.  Id. at 14-15.  Specifically, the plaintiff directs the Court to instances where the defendant released documents containing comments from the general public, but withheld documents containing the views of non-agency attorneys.  Id.  Moreover, the plaintiff notes that the defendant released three documents containing the views of non-agency attorneys, but withheld documents containing the views of other such attorneys.  Id.  These inconsistencies, the plaintiff opines, demonstrate that the defendant's response to the plaintiff's FOIA request was made in bad faith.  Id. at 14-16.  The defendant contends, however, that based on the affidavits presented to the Court and the evidence in the record, there has been no showing of bad faith, inconsistency, or incompetence on its part.  Def.'s Opp'n at 2-3.  This Court agrees with the defendant's positions for the reasons set forth below.

The plaintiff's first challenge to the defendant's failure to account for allegedly responsive documents in its initial FOIA search is essentially an attack on the adequacy of the defendant's search based on a claim that it was conducted in bad faith.[4]  The FOIA requires an agency defendant to show "beyond material doubt" that it has conducted a search reasonably calculated to uncover all relevant documents.  Weisberg, 705 F.2d at 1351.  As the District of Columbia Circuit has made clear, "[t]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate."  Id. (quoting

---

[4]  The plaintiff also challenges the overall adequacy of the search.  This position is addressed more fully in a subsequent section of this opinion.  See infra Section III.E at 35-37.

Perry v. Block, 684 F.2d 121, 128 (D.C. Cir. 1982) (per curiam) (emphasis in original)).  "The

adequacy of an agency's search is measured by a 'standard of reasonableness' and is 'dependent

upon the circumstances of the case.'"  Id. (quoting McGehee v. CIA, 697 F.2d 1095, 1100-01

(D.C. Cir. 1983); Founding Church of Scientology v. NSA, 610 F.2d 824, 834 (D.C. Cir. 1979)).

To establish that an agency has conducted an adequate search, the government may rely on

affidavits, as long as they are "reasonably detailed . . . setting forth the search terms and the type

of search performed, and averring that all files likely to contain responsive materials (if such

records exist) were searched." Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326

(D.C. Cir. 1999) (quoting Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1980)); see

also Weisberg, 705 F.2d at 1351 ("The government may rely upon affidavits to show it has

conducted a reasonable search, as long as they are 'relatively detailed and nonconclusory

and . . . submitted in good faith.'") (quoting Goland v. CIA, 607 F.2d 339, 367, 369 (D.C. Cir.

1979)).  Moreover, it is well-settled in this Circuit that subsequent disclosure of documents

initially withheld does not alone establish bad faith.  E.g., Public Citizen v. Dep't of State, 276

F.3d 634, 645 (D.C. Cir. 2002); Gutman, 238 F. Supp. 2d at 291.

      Here, rightly or wrongly, the defendant narrowly construed the plaintiff's initial FOIA

request.  However, after the parties engaged in discussions and this suit was commenced, the

defendant expanded its search for responsive documents, searched in locations not previously

searched and utilized different search terms which expanded the scope of the search.  While it

now seems obvious that the defendant's initial search was inadequate, and it is clear that the

defendant could have been more diligent in its initial response to the plaintiff's FOIA request, this

does not demonstrate bad faith.  As the Eighth Circuit has noted, "[w]hile the discovery of

additional documents is evidence that the search was not thorough, such discovery is not conclusive of agency bad faith. It may be indicative of administrative inefficiency, or it may, as in this case, indicate reluctant diligence by the agency under the goad of persistent litigation by a determined plaintiff." Miller v. Dep't of State, 779 F.2d 1378, 1386 (8th Cir. 1986) (internal citations omitted). Such is the case here. Although the agency was not initially diligent, that alone does not demonstrate bad faith, especially in light of the subsequent efforts to search for responsive records once the parties engaged in discussions about the specific type of documents the plaintiff was seeking.[5]

The plaintiff's second argument — that bad faith is evidenced because there are inconsistencies between released documents and documents that have been withheld — is also meritless. Pl.'s Mem. at 14. The plaintiff avers that some released documents are virtually identical in substance to other documents that have been withheld. For example, the plaintiff points to instances where documents containing the views of the general public or non-agency attorneys were released, but other documents containing the views of other non-agency attorneys were not released. Id. at 14-15. While conceding that the release of documents containing comments from some non-agency attorneys and the general public does not waive the agency's ability to withhold similar documents, the plaintiff opines that the agency must clearly detail why documents containing the comments of one set of attorneys can be released, but documents

_____

[5] The plaintiff places great weight on Am. Civil Liberties Union v. Dep't of Defense, 339 F. Supp. 2d 501 (S.D.N.Y. 2004) to demonstrate that the defendant has a complete indifference to the mandates of the FOIA. Pl.'s Mem. at 13-14. However, this case is completely inapposite. There, the Court noted that "with small exception, no documents [had] been produced by defendant; no documents [had] been identified; no exemptions [had] been claimed; and no objections [had] been stated." Id. at 502-03. As demonstrated by the facts in this case, thousands of documents have been identified and produced, exemptions have been claimed, and a Vaughn index has been provided. Thus, the plaintiff's reliance on Am. Civil Liberties Union is clearly misplaced.

containing the comments from another set cannot.  To support its position, the plaintiff relies on

Army Times Publishing Co. v. Dep't of the Air Force, 998 F.2d 1067 (D.C. Cir. 1993). Id. at 16-

17.  This case simply does not support the plaintiff's contention.

    In Army Times, the plaintiff sought to obtain certain information pursuant to the FOIA

that had been acquired by the Air Force through telephone surveys conducted by non-agency

pollsters hired by the agency to assess military personnel views on working conditions.  Id. at

1068-69.  The defendant had previously released some of the survey results through news

releases.  Id. at 1069.  The defendant, in denying the plaintiff's FOIA request, claimed that

FOIA's Exemption 5 prohibited the release of the withheld information.  Id.  The district court

granted summary judgment to the Air Force.  However, on appeal, the District of Columbia

Circuit reversed, concluding that because some information from the surveys had been voluntarily

produced, the agency could not claim a blanket exemption under the FOIA.  Id. at 1071.  Thus, to

withstand scrutiny, an agency must provide detailed affidavits and/or a Vaughn index indicating

why the documents withheld warrant application of Exemption 5, including determinations on

segregability.  Id.

    Here, to the extent the plaintiff claims that bad faith is shown by the defendant's failure to

comply with the requirement of Army Times, this argument misses the mark.  First, Army Times

did not even discuss bad faith, and it is therefore unclear why the plaintiff has relied on it for its

bad faith proposition.  Rather, Army Times addressed the applicability of Exemption 5, and stands

for the proposition that a blanket exemption can not be claimed when part of the requested

information has already been released.  And, the defendant has complied with the requirements of

Army Times.  It has provided affidavits and a Vaughn index detailing why particular documents

were withheld, and has made segregability determinations.  See Def.'s Opp'n, Ex. 2; Ex. 3; Ex. 4.

It was the lack of such information that was fatal to the agency's non-production in Army Times.[6]

Moreover, there is even a more fundamental problem with the plaintiff's reliance on Army Times;

it is simply not factually analogous.  There, the issue was whether the withholding of portions of

survey information was proper when some of that information had already been voluntarily

released by the agency.  For Army Times to be analogous, the Court would have to be presented

with facts that show, for example, that some information regarding Lloyd Cutler's (one of the

non-agency attorneys) views had been released by the defendant, while other views expressed in

the same or another document by Mr. Cutler were not released.  Such is not the case here, as the

Court is presented with evidence that documents containing the views from one set of attorneys

(those who provided their views in confidence) were withheld, while documents containing the

views of a completely separate set of attorneys (those who did not provide their views in

confidence) were released.  This difference is critical, as the documents themselves are

distinguishable.  Nonetheless, even if this Court could conclude that the defendant was required to

comply with Army Times, but failed to do so, such a finding would not demonstrate bad faith or

incompetence.

    The Court therefore rejects the plaintiff's contention that the defendant's response to the

---

[6] Although this Court will address Exemption 5 in more detail in a separate portion of this opinion, see infra Section III.C at 23-32, because the plaintiff relies on Army Times as support for its bad faith argument, it is appropriate to note that the defendant, by using detailed affidavits and a Vaughn index, has satisfied the Exemption 5 requirements.  The defendant has demonstrated that it did not err when it released documents containing the views of some non-agency attorneys, while withholding the views and correspondence of other non-agency attorneys because they were "provided in confidence." Def.'s Opp'n, Ex. 4 ¶ 4.  In fact, as Army Times made clear, and the plaintiff concedes, the release of documents containing the views of some non-agency attorneys does not waive the right to claim an exemption to withhold documents containing the views of other non-agency attorneys, which is exactly what has occurred here.

plaintiff's FOIA request has been infected with bad faith.

**(B)       Exemption 3 of the FOIA**

Exemption 3 of the FOIA exempts from disclosure any document that has been

"specifically exempted from disclosure by statute . . . , provided that such statute (A) requires that

the matters be withheld from the public in such a manner as to leave no discretion on the issue, or

(B) establishes particular criteria for withholding or refers to particular types of matters to be

withheld." 5 U.S.C. § 552(b)(3).  As the District of Columbia Circuit has noted, "a statute that is

claimed to qualify as an Exemption 3 withholding statute must, on its face, exempt matters from

disclosure.  We must find a congressional purpose to exempt matters from disclosure in the actual

words of the statute . . . [not] in an agency's interpretation of the statute."  Reporters Comm. for

Freedom of the Press v. Dep't of Justice, 816 F.2d 730, 735 (D.C. Cir. 1987), rev'd on other

grounds, 489 U.S. 749 (1989).  Thus, "[t]he aim of Exemption 3 is to incorporate only those

statutes where it is clear that the basic policy decision in favor of nondisclosure has been made by

the Legislative rather than by the Executive Branch."  Long v. IRS, 742 F.2d 1173, 1179 n.14

(9th Cir. 1984) (citing Am. Jewish Congress v. Kreps, 574 F.2d 624, 628 (D.C. Cir. 1978)).

Here, the defendant relies on 10 U.S.C. § 130c (2000) as the basis for withholding

documents pursuant to Exemption 3.  Def.'s Mem. at 10-13.  Section 130c provides that certain

national security officials, in this case the Secretary of Defense, can withhold from public

disclosure sensitive information of foreign governments.  10 U.S.C. §§ 130c(a), (h).  The

documents at issue here are correspondence between DoD officials and representatives of the

British and Canadian governments.  Def.'s Mem. at 10-13.  Because the plaintiff concedes that

this statute satisfies the requirements of Exemption 3, Pl.'s Mem. at 31-32, the only question

remaining is whether the requirements for withholding the documents under § 130c have been satisfied.

Information eligible for exemption from disclosure under 10 U.S.C. § 130c is defined by the statute as follows:

> (b)  Information eligible for exemption.— For the purposes of this section, information is sensitive information of a foreign government only if the national security official concerned makes each of the following determinations with respect to the information:
>> (1)  That the information was provided by, otherwise made available by, or produced in cooperation with, a foreign government or international organization.
>> (2)   That the foreign government or international organization is withholding the information from public disclosure (relying for that determination on the written representation of the foreign government or international organization to that effect).
>> (3)   That any of the following conditions are met:
>>> (A)  The foreign government or international organization requests, in writing, that the information be withheld.
>>> (B)  The information was provided or made available to the United States Government on the condition that it not be released to the public.
>>> (C)  The information is an item of information, or is in a category of information, that the national security official concerned has specified in regulations prescribed under subsection (f) as being information the release of which would have an adverse effect on the ability of the United States Government to obtain the same or similar information in the future.

10 U.S.C. § 130c(b).   The statute also contains provisions controlling the length of time documents may be withheld from public disclosure.  10 U.S.C. § 130c(d).

The plaintiff argues that the defendant has failed to comply with the requirements of § 130(b), and thus it cannot rely upon this statutory provision to withhold responsive documents. The plaintiff advances five arguments in support of its position.  First, the plaintiff contends that Christine Ricci, the declarant espousing the applicability of § 130c(b), does not have the authority to do so because she is not a "national security official."  Pl.'s Mem. at 34.  Second, the plaintiff opines that the defendant cannot satisfy 10 U.S.C. § 130c(b)(1) as to any documents that were sent

from DoD officials to officials of either the British or Canadian governments because the documents are not "from" these foreign governments.   Pl.'s Mem. at 33-34.   Third, the plaintiff contends that the defendant has failed to satisfy § 130c(b)(2) because it asserts there is no written representation from a foreign government stating that the foreign government is withholding the information from the public.   Id. at 34.   Fourth, the plaintiff broadly avers that the defendant has not satisfied any of the requirements under 10 U.S.C. § 130c(b)(3).   Pl.'s Mem. at 33-36.   And finally, the plaintiff opines that the defendant has failed to properly specify a time when the documents should be released.   Id. at 36.   The defendant takes exception with all of these positions.   Def.'s Opp'n at 11-14.   The Court will address each of the parties' arguments in turn, and for the reasons set forth below concludes that the defendant has failed to completely satisfy the requirements of § 130c.

Initially, this Court must determine whether Ms. Ricci has the authority to determine whether documents can be withheld under § 130c.   Pl.'s Mem. at 34.   10 U.S.C. § 130c(a) states that "[t]he national security official concerned . . . may withhold from public disclosure . . . sensitive information of foreign governments in accordance" with the several provisions of the statute.   And § 130c(h)(1) defines "[t]he term national security official concerned" as the "Secretary of Defense," the "Secretary of Homeland Security," and the "Secretary of Energy." Ricci is therefore not a "national security official" under § 130c(h)(1) as she serves as a DoD Associate Deputy General Counsel (Legal Counsel) in the Office of the General Counsel.   Ricci Decl. ¶ 1.   Apparently recognizing that Ricci does not qualify as a national security official, the defendant argues that she has the authority to withhold documents under § 130c pursuant to her authority as an Initial Denial Authority when responding to FOIA requests.   Def.'s Opp'n at 11.

14

Thus, according to the defendant, since § 130c can form the basis for withholding documents under Exemption 3, and Ms. Ricci has the authority to withhold documents under the FOIA, she "in essence" has the authority to withhold documents under § 130c. Id. (citing Pl.'s Opp'n, Ex. 4 ¶ 6). This reasoning simply misses the mark.

10 U.S.C. § 130c(h) clearly provides, at least in the context of this case, that only the Secretary of Defense may designate documents to be withheld under § 130c. The statute provides for no other person in the DoD to make such a determination, nor does it incorporate any language to suggest that an individual with authority to withhold documents under the FOIA can also withhold documents under § 130. This Court cannot read into a statute language that is clearly not there. Qi-Zhuo v. Meissner, 70 F.3d 136, 140 (D.C. Cir. 1995) ("Where, as here, the plain language of the statute is clear, the court generally will not inquire further into its meaning."). Moreover, while this Court can look beyond the plain language of a statute if applying the plain language would lead to an absurd result, Perry v. Commerce Loan Co., 383 U.S. 392, 400 (1966), the defendant makes no such argument here, nor could it for the following reasons. It is clearly not unreasonable for the Secretary to be exclusively charged on behalf of the DoD with making a determination of whether documents containing sensitive information from foreign governments should be withheld from public disclosure. Moreover, even if 10 U.S.C. § 130c(g), which provides that the Secretary "shall . . . prescribe regulations to carry out this section," authorizes the Secretary to delegate his authority for designating documents for non-production under § 130c (a question the Court need not answer in this case), the defendant has not directed this Court to any regulation where such a designation has been made, nor could this Court find any. Rather, the defendant asks this Court to infer that § 130c authority has been delegated by the Secretary to Ms.

15

Ricci because she "is an 'official who has been granted authority by the head of a DoD component to withhold records requested under the FOIA . . . .'" Def.'s Opp'n at 11.[7]  This Court simply cannot make that leap to permit the Secretary to avoid the authority vested in him by statute, or to at least promulgate regulations for the delegation of that authority, which would trigger the notice and comment requirements that would likely accompany any rulemaking under § 130c(g).  See, e.g., 5 U.S.C. § 553 (discussing the notice and comment process).  Accordingly, it is clear that the defendant has failed to comply with the requirements of 10 U.S.C. § 130c.  Nonetheless, this Court will examine the parties' remaining arguments in assessing how to resolve the parties' summary judgment motions.[8]

The Court turns now to the plaintiff's remaining arguments.  10 U.S.C. § 130c(b)(1) requires the withholding of documents if "the information was provided by, otherwise made available by, or produced in cooperation with, a foreign government or international organization."  10 U.S.C. § 130c(b)(1).  The plaintiff contends that documents 2, 78, 81, and 85 cannot be withheld under this provision because the documents were sent from DoD officials to the foreign governments, rather than having been received from those foreign governments.  Pl.'s

_____

[7]  Even if the Court could accept the defendant's position, which it cannot, the defendant's argument would still fail.  Section 130c makes clear that the power for withholding documents lies with the Secretary of Defense, thus only the Secretary of Defense can delegate those powers, assuming that delegation is permitted.  Ricci's powers under the FOIA, however, have been given to her by the head of a Department of Defense Component.  Def.'s Opp'n, Ex. 5 at 14.  The Secretary is not a Department of Defense Component, and thus, Ricci's authority to address FOIA requests is of no moment.  In any event, assuming the Secretary can delegate his authority under § 130c, it is clear that such delegation could only be effected pursuant to regulations adopted by the Secretary.  See 10 U.S.C. § 130c(g)(1).

[8]  As this Court concludes below, the defendant has satisfied the other requirements for withholding documents pursuant to 10 U.S.C. § 130c.  Accordingly, this Court will not require that the defendant, at this time, release the documents solely because they have failed to properly designate the documents as protected by 10 U.S.C. § 130c.  Rather, this Court will afford the defendant an opportunity to cure the defect discussed herein.  Failure to do so, however, will result in this Court ordering the documents released.

Mem. at 34.  Specifically, documents 2, 81, and 85 are correspondence (or draft correspondence) from the General Counsel of the DoD to the Attorney General of the United Kingdom.  Def.'s Mem., Ex. 11 (Vaughn Index) at 2, 57-58, 62-63.  Each of these correspondences responded to specific issues raised by the Attorney General of the United Kingdom regarding the military commission proceedings.  Id.  And document 78 is a correspondence from the General Counsel of the DoD to the British Ambassador to the United States which responded to concerns from the United Kingdom regarding the military commissions.  Id. at 53-54.  The plaintiff asks this Court to read § 130c(b)(1) narrowly so as to exempt from disclosure only correspondence from foreign governments to the United States.  Pl.'s Mem. at 34.  Thus, the plaintiff opines that since these correspondences emanate from the United States, they are not protected by 10 U.S.C. § 130c(b)(1).  Id.  This Court cannot accept the plaintiff's reading of the statute.

It is important to note at the outset that there is a dearth of case law construing § 130c in the FOIA context.  In fact, the parties are only able to provide this Court with two cases in which courts have considered whether § 130c could be invoked to withhold documents under Exemption 3 of the FOIA, Def.'s Opp'n at 13-14, and this Court can find no others.  These cases, although not binding on this Court, are persuasive.  In fact, in ACLU v. Dep't of Defense,, No. 04-CV-4151 (S.D.N.Y. 2004), a member of the District Court for the Southern District of New York rejected a similar argument that 10 U.S.C. § 130c(b)(1) should be read narrowly.  Def.'s Opp'n, Ex. 7.  In that case, the District Court was presented with the question of whether communications from the DoD to the International Committee of the Red Cross ("Red Cross") were properly withheld pursuant to 10 U.S.C. § 130c.  Id. at 7-8.  Those communications expressed concerns raised by the Red Cross about the treatment of detainees at Guantanamo Bay, Cuba.  Id.  In

concluding that § 130c protected those documents from disclosure, the Court found that "if the [Red Cross] has made a point [,] and the government in considering the point and in responding to the point expresses itself in a way that would allow the reader to see the point communicated by the [Red Cross], I would think the . . . privilege would apply." Id. at 8.  The conclusion is consistent with the plain language of the statute which prohibits the disclosure of  "information . . . provided by, otherwise made available by, or produced in cooperation with, a foreign government or international organization." 10 U.S.C. § 130c(b)(1) (emphasis added).  The statute therefore protects certain information produced by the United States so long as it was created in cooperation with a foreign government or an international organization.  Thus, the origin of a document is not determinative.  Indeed, it would be absurd to conclude that the government may only withhold information relayed from the foreign government, but not a document produced by the United States in cooperation with the foreign government even though the United States's generated documents make clear the substance of the information provided by the foreign government.

In this case, the Vaughn index states that all four challenged documents are responses to issues raised by officials of the United Kingdom.  By responding to this request for sensitive information, these documents themselves fall under the ambit of 10 U.S.C. § 130c, as a reader would undoubtedly be made aware of the issues raised by the United Kingdom upon reading them.  Thus, so long as the information contained in the letters satisfies the other requirements of § 130c(b), the correspondence clearly relate to information that is protected by the statute and can properly be withheld.

The plaintiff's third contention is also without merit.  10 U.S.C. § 130c(b)(2) requires that

18

the foreign government indicate <u>in writing</u> that they are withholding from public disclosure the information provided to the United States.  The plaintiff contends that the Ricci declaration is devoid of any reference to a written representation from a foreign government stating that it is withholding from public disclosure the information which is the subject of its inquiry.  Pl.'s Mem. at 34.  In fact, the plaintiff contends that the British government has disclosed much of the information it is requesting.  <u>Id.</u>  This Court agrees that the Ricci declaration does not allege the existence of a written statement of non-disclosure from a foreign government.  Ricci Decl. ¶ 19. However, the defendant, no doubt appreciating its failure to comply with this requirement, clarified in a later declaration submitted by Ms. Heckler that it "h[as] since received written communications from the foreign governments regarding this matter.  These communications make clear that the foreign governments are withholding this information from public disclosure and that they are asking the Department of Defense also to not release the information to the public."  Pl.'s Reply, Ex. 4 ¶ 7.  It is apparent that when Ricci submitted her declaration that the foreign governments had made no written representation indicating its desire that the requested information not be released to the public.  Thus, any attempt to withhold disclosure under § 130c based on Ms. Ricci's declaration surely would have failed.  It is curious then why the defendant would even attempt to assert § 130c based on what Ricci said.  However, the defendant now claims that the foreign governments have made such representations, albeit in the final stages of the briefing of the parties' dispositive motions.  This Court has no reason to doubt the veracity of this new declaration, and for the purpose of addressing the current motions will rely upon the representations made by Ms. Heckler.  <u>Public Citizen</u>, 276 F.3d at 645.  However, if the defendant again reasserts Exemption 3 and § 130c, the Court will require that the defendant submit copies of

these written representations.[9]

The plaintiff also posits that 10 U.S.C. § 130c(b)(2) cannot be invoked because the foreign governments themselves have made clear their positions regarding military commissions.  Pl.'s Mem. at 29-30, 34.  Admittedly, the foreign governments have expressed, in a general sense, their positions on the military commissions.  Id.  at 30.  However, these general expressions do not establish that the discrete information provided in the correspondence the plaintiff seeks to acquire have been released to the public by the foreign governments.  Moreover, the defendant has submitted affidavits indicating that the foreign governments have not released the information to the public.  There is simply no "authority for the proposition that the Secretary of Defense must look behind" the written statements for non-disclosure provided by a foreign government to determine whether the foreign government desires to withhold the information from the public.  Gerstein v. Dep't of Defense, No. 03-5193, slip-op. at 7-8 (N.D. Ca. Dec. 21, 2004).  Rather, the Secretary can rely on the written representations made by the foreign governments and need not engage in an exhaustive review to determine their veracity.  But in any event, here, the public expressions of general views about military commissions by the foreign countries does not encompass the more detailed views on the subject that have not been publicly disclosed.

---

[9] This Court is troubled by the defendant's initial reliance on 10 U.S.C. § 130c, as the Hecker declaration makes clear that the requirements of § 130c(b)(2) were not complied with at the time the documents were withheld and at the time summary judgment briefing commenced in this action.  While the Court has no reason to believe that the defendant, through the Ricci Declaration, attempted to deceive either the Court or the plaintiff, it is clear it had no legal basis for its position based on her declaration.  Nevertheless, the defendant has now satisfied all but one of the requirements of 10 U.S.C. § 130c.  And because this Court is permitting the defendant to correct the failure to have the proper person designate documents that are being withheld under § 130c, the Court will also require the defendant to submit to the Court copies of the written representations from the foreign governments.  If, for some reason, the defendant believes these communications also cannot be made public, the Court will consider permitting the defendant, upon motion, to submit them ex parte for the Court's in camera inspection.

The plaintiff next argues that the defendant failed to comply with 10 U.S.C. § 130c(b)(3).

Pl.'s Mem. at 34-36.  This argument is also without merit.  Under § 130c(b)(3), the defendant

must satisfy at least one of three following requirements:

> (A)   The foreign government or international organization requests, in writing, that the information be withheld.
> (B)   The information was provided or made available to the United States Government on the condition that it not be released to the public.
> (C)   The information is an item of information, or is in a category of information, that the national security official concerned has specified in regulations prescribed under subsection (f) as being information the release of which would have an adverse effect on the ability of the United States Government to obtain the same or similar information in the future.

10 U.S.C. § 130c(b)(3).  Based on the declarations submitted to this Court, it is clear that the

defendant has complied with § 130(b)(3)(A) and (B).  As previously discussed, following the

commencement of this litigation, the foreign governments submitted, in writing, their position that

the information at issue here was provided to the United States on the condition that it be kept

secret from the public.  Def.'s Opp'n, Ex. 4 ¶ 7.  Moreover, earlier declarations make clear that

the information contained in the documents was "provided in confidence on the condition that

they not be released to the public."  Ricci Decl. ¶ 19.  It is well-settled in this Circuit that this

Court may properly rely upon the declaration submitted by the parties in support of their summary

judgment motions.  Public Citizen, 276 F.3d at 645.  Here, this Court can see no reason why these

declarations are not sufficient, as they are not conclusory or contradicted by other evidence.

Accordingly, the challenged documents have satisfied the requirements of 10 U.S.C. § 130c(b)(3).

Finally, the plaintiff alleges that the defendant has failed to comply with 10 U.S.C.

§ 130c(d)(3), because no date certain for the release of the information was designated.  Pl.'s

Mem. at 36 n.28; Pl.'s Reply at 15-16.  The plaintiff's argument has no merit.  The plaintiff

claims that the national security official who invoked § 130c was required to set a date when the

information contained in the withheld documents can be released because the foreign

governments did not identify a specific date.  Pl.'s Reply at 15.  However, the plaintiff

misconstrues the circumstances under which § 130c(d)(3) is applicable.

      10 U.S.C. § 130c(d) sets forth a formula for determining if, and when, documents

protected from disclosure should released to the public.  The plaintiff concedes that the

information at issue here came into the possession of the United States after the enactment of

Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001.  Pl.'s Mem. at 33.

Thus, the release of this information is controlled by 10 U.S.C. § 130c(d)(2).  Under this

provision, information can be withheld only until the date specified by the foreign government.

Id. § 130c(d)(2)(B).  Here, however, the foreign governments have failed to specify a date for the

release of the information.  Thus, the plaintiff opines that 10 U.S.C. § 130c(d)(3) applies, and the

national security official was required to select a date for the release of the information after

considering the requests of the foreign government who provided the information.  10 U.S.C.

§ 130c(d)(3).  While the plaintiff is correct in its reading of the statute, it completely ignores

another provision of the statute.  Under § 130c(d)(2)(C), § 130c(d)(3) applies only if the

information requested "came into possession or under the control of the United States more than

ten years before the date on which the request is received by an agency."  Thus, unless the

information came into the possession of the United States more than ten years before the request

for disclosure was made, the Court need not engage in the analysis called for in § 130c(d)(3).

Rather, this determination need only be made if the national security official receives a request for

documents that have been under the possession and control of the United States for ten or more years.  Accordingly, the statute presumes in the situation here that there will be nondisclosure for at least ten years from the time the requested information "came into the possession or control of the United States."   10 U.S.C. § 130c(d)(2)(C).  With the plaintiff conceding that the information came into the possession of the United States after 2001, it is clear, contrary to the plaintiff's suggestion, that the national security official is not yet required to designate a date certain for the release of the information.  Rather, such a designation need only be made if a request for the documents is received after the United States has been in possession of the documents for more than ten years, and after the government confers with the foreign governments. See 10 U.S.C. § 130c(d).  Here, the documents in question were received by the United States between June and October 2003.  Def.'s Mem., Ex. 11 at 2, 53, 57, 62.  Thus, the agency does not need to designate a specific date for the release of the documents until a request for the documents is received after the United States has been in possession of them for more than ten years, which would be in October 2013.

Based on the foregoing discussion, it would seem that the documents withheld by the defendant likely qualify for protection under 10 U.S.C. § 130c.  However, the defendant has failed to properly invoke this statutory provision because the Secretary, pursuant to his duty under the statute, has not designated the documents as eligible for exemption under § 130c.

**(C)     Exemption 5 of the FOIA**

Exemption 5 of the FOIA's disclosure requirements protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  "In other words, Exemption 5

incorporates 'all civil discovery rules'" into the exemption.  <u>Defenders of Wildlife v. Dep't of Agriculture</u>, 311 F. Supp. 2d 44, 57 (D.D.C. 2004) (quoting <u>Martin v. Office of Special Counsel</u>, 819 F.2d 1181, 1185 (D.C. Cir. 1987)).  Thus, courts have incorporated the following three traditional civil discovery privileges under Exemption 5:  (1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege.  <u>Id.</u>, <u>see also</u> <u>Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 149 (1975);  <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 862 (D.C. Cir. 1980).  However, "Congress intended to confine exemption (b)(5) 'as narrowly as is consistent with efficient Government operation.'" <u>Puerto Rico</u>, 823 F.2d at 584 (quoting <u>Coastal States</u>, 617 F.2d at 868).  Any challenge to nondisclosure under Exemption 5 first requires the Court to determine whether the withheld documents qualify as "intra-agency" or "inter-agency" documents and second to assess whether one of the three enumerated privileges applies.  Here, the plaintiff raises a number of challenges to the defendant's assertion of the exemption, and the Court will now address each prong of the test in turn.[10]

> **(1)     Are Comments from Non-Agency Lawyers Protected from Disclosure as "Intra-Agency" or "Inter-Agency" Documents?**

Fundamental to the assertion of Exemption 5 is the requirement that the documents being

---

[10]  Any legal analysis under Exemption 5 of the FOIA requires the Court to first determine whether there are "intra-agency" or "inter-agency" documents at issue.  If the Court answers this question in the affirmative, the next question to decide is whether one of the three recognized privileges applies, <u>i.e.</u>, whether the deliberative process privilege prohibits disclosure of the documents.  This second analysis requires the Court to examine, for example, whether the documents are predecisional and deliberative.  In this case, both parties appear to have conflated this two level analysis into a single determination.  However, the vast majority of the plaintiff's arguments relate to the first question — whether the documents are intra-agency or inter-agency.  In fact, it appears that the only argument raised by the plaintiff that the documents are not entitled to the deliberative process privilege is that there is no evidence that open and frank communications will be affected by the disclosure of the information.  Pl.'s Mem. at 24.

withheld qualify as either "inter-agency" or "intra-agency" documents.  The defendant claims that it properly withheld the documents here pursuant to the deliberative process privilege of Exemption 5 because they reflect the views and opinion of "DoD officials, attorneys, and consultants" in connection with the promulgation of regulations detailing the process for conducting military commissions, and thus qualify as either intra-agency or inter-agency documents.  Def.'s Mem. at 17.  The plaintiff, however, argues that the private attorneys who provided comments to the DoD are not agency personnel or consultants, but rather are simply private citizens voicing their opinions.  Pl.'s Mem. at 19-20.  Thus, the plaintiff opines that documents containing the views of these private attorneys cannot be withheld under Exemption 5. Id.  Specifically, the plaintiff argues that the views of private citizens are not protected from disclosure unless the agency can properly invoke the "consultant corollary exception," which treats the views expressed by individuals outside the agency the same as agency personnel.  Pl.'s Reply at 1.  Here, the plaintiff claims that this exemption does not apply because:  (1) the attorneys "volunteered" their time and did not function as agency personnel; (2) they did not possess expertise that was unavailable within the government; (3) their views were simply comments on a rulemaking process; (4) there is no reasonable basis to believe that disclosure of these documents would inhibit frank and honest communication; (5) there is no evidence that their comments were provided in confidence; and (6) the DoD has released comments from other outsiders who are in virtually the same position as those individuals whose comments were withheld.[11]   Id. at 2.  The defendant, however, argues that the documents containing the views of

---

[11]  Despite the plaintiff's assertion that all of these arguments relate to whether the documents of these attorneys are properly classified as intra-agency documents, Pl.'s Reply at 2, some, in fact, are more appropriately

(continued...)

the non-agency attorneys are properly treated as intra-agency or inter-agency documents.  This

Court agrees.

The Supreme Court has made clear that Exemption 5 protects not only inter-agency and

intra-agency communications among employees, but also communications from outside

consultants or other individuals hired or solicited by an agency for their views.  See Dep't of the

Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 10-11 (2001).  For example, in

Public Citizen, Inc. v. Dep't of Justice, 111 F.3d 168 (D.C. Cir. 1997), the District of Columbia

Circuit held that communications between former Presidents of the United States and the National

Archives and Records Administration concerning the maintenance of their presidential records

were protected from disclosure under the deliberative-process privilege under Exemption 5, even

though the former Presidents had "independent presidential interests" in the disposition of their

documents by the agency. 111 F.3d at 171.  Moreover, in Ryan v. Dep't of Justice, 617 F.2d 781

(D.C. Cir. 1980), the Circuit Court held that Senators' responses to a questionnaire from the

Attorney General about judicial nominations were exempt from disclosure even though the

Senators likely had strong personal views on the matter.  617 F.2d at 790 ("When an agency

record is submitted by outside consultants as part of the deliberative process, and it was solicited

by the agency, we find it entirely reasonable to deem the resulting document to be an 'intra-agency

memorandum.'"); see also Formaldehyde Institute v. Dep't of Health and Human Services, 889

F.2d 1118, 1122 (D.C. Cir. 1989) (quoting Ryan, 617 F.2d at 789-90); Wu v. Nat'l Endowment

for Humanities, 460 F.2d 1030, 1032 (5th Cir. 1972); Larder v. Dep't of Justice, 2005 WL

---

[11](...continued)
addressed in the following section concerning the deliberative process privilege and accordingly will be addressed
there.

758267, at *15 (D.D.C. March 31, 2005) (following the holdings in <u>Ryan</u> and <u>Klamath</u>).

While a consultant need not "be devoid of a definite point of view when the agency contracts for its services," <u>Klamath</u>, 532 U.S. at 10, for his views to be covered by Exemption 5, the consultant should not be representing an interest of his own, or that of any client, when he or she is advising the agency, <u>Id.</u> at 10-11.  Thus, as the <u>Klamath</u> Court noted, when a consultant has no interest to advance, his only obligation is "to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do." <u>Id.</u> at 11.  In <u>Klamath</u>, the agency was communicating with Indian tribes who clearly had their own interests in mind, and thus were self-advocates at the expense of others.  <u>Id.</u> at 12; <u>see also</u> <u>Larder</u>, 2005 WL 758267, at *14-15.  Accordingly, documents containing their positions were not intra-agency records under Exemption 5.  <u>Id.</u>  The holdings in <u>Public Citizen</u> and <u>Ryan</u> are arguably a more expansive view of the Exemption 5 privilege than that discussed in <u>Klamath</u>, because the Senators in <u>Ryan</u> and the former Presidents in <u>Public Citizen</u> were advocating positions which would likely benefit themselves.  Nevertheless, the Supreme Court explicitly declined to overrule these rulings of the District of Columbia Circuit, <u>Klamath</u>, 532 U.S. at 12 n.4 (citing <u>Public Citizen</u>, 111 F.3d at 168; <u>Ryan</u>, 617 F.2d at 781), and they remain good law and therefore binding on this Court.

The documents requested here fall squarely within the scope of these cases and the reasoning in <u>Klamath</u>.  The information that came from the non-agency attorneys consisted of memoranda, correspondence, emails, and draft documents, all relating to the adoption of the regulations establishing the military commissions.  <u>See, e.g.</u>, Def.'s Mem., Ex. 11 at 3-4, 11-12,

27

13-24.  Moreover, the views of these non-agency attorneys were requested by the DoD.[12]   There

is simply no evidence that any non-agency attorneys were representing their personal interests or

the interests of any clients in making their comments.  Rather, the comments were clearly made to

advance the "truth and [the consultant's] sense of what good judgment calls for, and in those

respects [the consultant] functions just as an employee would be expected to do." Klamath, 532

U.S. at 11.

The plaintiff's attempt to distinguish the case at hand from the controlling precedent in

this Circuit and persuasive case law from other Circuits is simply unavailing.  First, Wu and

Formaldehyde make clear that documents need not be produced by government employees to be

considered "intra-agency" documents. Formaldehyde Inst., 889 F.2d at 1120 (outside experts in

Chinese studies); Wu, 460 F.2d at 1031 (outside reviews for journal article).  Moreover, contrary

to the plaintiff's suggestion, there is simply no requirement under the case law that the outside

consultants possess expertise not possessed by those inside the agency.  As the Supreme Court has

noted, the objective of the deliberative process privilege under Exemption 5 "is to enhance 'the

quality of agency decisions.'" Klamath, 532 U.S. at 9 (citing Sears, Roebuck & Co., 421 U.S. at

151.)  Clearly, the views of non-agency practicing attorneys either challenging or confirming the

views of DoD's internal attorneys and other personnel on a subject of vital importance to this

nation would enhance the quality of the agency's decision making process and is consistent with

---

[12]  To the extent that the plaintiff argues that the non-agency attorneys simply "volunteered" their time and were not paid, nor even requested to share their views, Pl.'s Mem. at 20, the plaintiff's position still fails for several reasons.  First, the Fifth Circuit, in Wu, did not limit outside consultants only to those who are paid or provide extensive service to an agency.  Wu, 460 F.2d at 1031 (volunteer outside reviewers for a single project).  And second, the Secretary of Defense's statement that these attorneys volunteered their time, does not mean that their comments were unsolicited.  Rather, reading the transcript from the entire press conference cited by the plaintiff demonstrates that these attorneys were solicited for advice, and voluntarily provided it.  Pl.'s Mem., Ex. A at 9 ("We reached out not just to those people identified, [i.e., non-agency attorneys,] but also experts within the building.").

the objectives of Exemption 5.  Accordingly, documents containing the views of these non-agency

attorneys qualify as intra-agency documents.[13]

### (2)    The Deliberative Process Privilege

The defendant relies on the deliberative process privilege of Exemption 5 as the basis for

withholding the majority of the documents requested by the plaintiff.  Def.'s Mem. at 13.  The

deliberative process privilege protects from disclosure "documents reflecting advisory opinions,

recommendations and deliberations comprising part of a process by which governmental decisions

and policies are formulated."  Klamath, 532 U.S. at 8 (quoting Sears, 421 U.S. at 150) (internal

quotation marks omitted).  The purpose of the deliberative process privilege is to ensure open

communication between subordinates and superiors, to prevent premature disclosure of policies

before final adoption, and to avoid public confusion if grounds for policies that were not part of

the final adopted agency policy happened to be exposed to the public.  Defenders of Wildlife v.

Dep't of Agric., 311 F. Supp. 2d 44, 57 (D.D.C. 2004); Coastal States, 617 F.2d at 866.  Thus,

when a court reviews whether an agency properly withheld documents under the deliberative

process privilege, the critical question that must be answered is whether "disclosure of the

materials would expose an agency's decisionmaking process in such a way as to discourage

---

[13]  The plaintiff makes additional arguments, none of which warrant much discussion.  First, the plaintiff
opines that the defendant's conclusory statement that the non-agency attorneys were informed that their views would
be confidential is insufficient to establish that FOIA Exemption 5 applies.  Pl.'s Mem. at 25.  However, despite a
lengthy discussion in its papers, the plaintiff cites absolutely no legal authority for the proposition that the defendant
must establish that the views of the non-agency attorneys were furnished in confidence to be considered intra-agency
documents under Exemption 5.  It appears that the basis for the plaintiff's contention is that these non-agency
attorneys are merely private parties sharing their views with the agency.  Nonetheless, as already discussed, these
non-agency attorneys were acting as consultants, and thus qualified as quasi-employees of the agency.  Accordingly,
in order to encourage frank and open discussion, the documents containing the views of these non-agency attorneys
are confidential intra-agency records under the deliberative process privilege.  In addition, the plaintiff, relying on
Army Times, opines that the withheld documents are not intra-agency documents because some documents
containing the views of other non-agency attorneys were released.  As already discussed, however, Army Times
provides no assistance to the plaintiff.  See supra Section III.A at 10-11.

candid discussion within the agency and thereby undermine the agency's ability to perform its

functions." Formaldehyde, 889 F.2d at 1122 (quoting Dudman Commc'ns Corp. v. Dep't of the

Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987)); see also Sears, 421 U.S. at 151 (noting that the

main purpose of the deliberative process privilege is to "prevent injury to the quality of agency

decisions").  By its own terms, Exemption 5 only applies to "inter-agency" or "intra-agency"

records.

　　　For materials to be exempt from disclosure under the deliberative process privilege, the

agency must show that its decision is both (1) predecisional and (2) deliberative.  Nat'l Ass'n of

Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002).  "A document is predecisional if it

was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to

support a decision already made." Petroleum Info. Corp., 976 F.2d at 1434 (quoting

Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)).  Accordingly,

the decision must be "[a]ntecedent to the adoption of agency policy." Jordan v. Dep't of Justice,

591 F.2d 753, 774 (1978).  However, a document cannot be properly characterized as

predecisional "if it is adopted, formally or informally, as the agency position on an issue or is used

by the agency in its dealings with the public." Coastal States, 617 F.2d at 866.  Examples of the

type of documents that might qualify as predecisional are "recommendations, draft documents,

proposals, suggestions, and other subjective documents which reflect the personal opinions of the

writer rather than the policy of the agency." Id.

　　　A document is deliberative if the "materials . . . bear on the formulation or exercise of

agency policy-oriented judgment." Petroleum Info. Corp., 976 F.2d at 1435 (emphasis in

original).  The information must be "a direct part of the deliberative process in that it makes

recommendations or expresses opinions on legal or policy matters." Vaughn, 523 F.2d at 1144.

Most importantly, the document must reflect the "give-and-take of the consultative process."

Puerto Rico, 823 F.2d at 585.  In determining whether the deliberative process privilege should

apply to a particular document, courts often look at "the nature of the decision making authority

vested in the officer or person issuing the disputed document, and the relative positions in the

agency's chain of command occupied by the document's author and recipient." Animal Legal

Defense Fund, Inc. v. Dep't of the Air Force, 44 F. Supp. 2d 295, 301 (D.D.C. 1999) (citations

and internal quotation marks omitted).  Although there are many cases in this Circuit which

discuss the deliberative process privilege, these cases "are of limited help . . . because the

deliberative process privilege is so dependent upon the individual document and the role it plays

in the administrative process." Coastal States, 617 F.2d at 867.  As discussed above, and

repeatedly emphasized by the District of Columbia Circuit, "'conclusory assertions of privilege

will not suffice to carry' the agency's burden" of establishing its right to withhold records. Puerto

Rico, 823 F.2d at 585 (quoting Coastal States, 617 F.2d at 861).

The plaintiff puts forth two arguments in support of its position that the deliberative

process privilege is not applicable in this case.  Although the plaintiff does not contend that the

documents at issue are not predecisional, it does opine that the documents are not part of the

agency's deliberative process because (1) they are merely comments about a proposed rulemaking,

Pl.'s Mem. at 18, and (2) there is no evidence that open and frank communications will be

affected by the disclosure of the documents.  Pl.'s Mem. at 24.  Neither argument has merit for the

following reasons.

Although the plaintiff insists that exempting the views of non-agency attorneys from

31

disclosure pursuant to Exemption 5 "would create a dangerous exception to the notice and comment process" by creating a secret system for commenting on proposed rules, id. at 25, it concedes that this case does not involve an Administrative Procedure Act ("APA") rulemaking, 5 U.S.C. §§ 533, 706 (2000), Pl.'s Mem. at 25.  Thus, there is no conflict between the APA's notice and comment requirements and the objectives underlying Exemption 5 as suggested by the plaintiff.  In fact, "military or foreign affairs function[s] of the United States" are exempt from notice and comment rulemaking.  5 U.S.C. § 533(a).  In the alternative, the plaintiff opines that disclosure of the non-agency attorneys' comments would not stifle honest and frank communication with the agency, and thus they do not warrant protection under the deliberative process privilege.  Pl.'s Mem. at 24.  Specifically, the plaintiff contends that "comments from attorneys of the caliber and stature" of those that provided comments would not inhibit similarity situated outsiders from expressing their views, especially since some of the comments of others were not protected from release.  This argument is also baseless.  As already discussed, documents are deliberative if they are drafts or recommendations which reflect the personal view of the author, which clearly the documents in question here are.  See Coastal States, 617 F.2d at 867.  Moreover, contrary to the plaintiff's view, disclosure of these documents might very well stifle the frank and honest views of others who may in the future be asked to provide advice and guidance to the DoD.  And the stature of an outside consultant is simply irrelevant to this discussion.

In sum, the documents which contain the views of the non-agency attorneys qualify as intra-agency documents and are thus protected from disclosure by Exemption 5.

**(D)     Segregability of the Requested Information**

Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  However, "[i]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed <u>unless</u> they are inextricably intertwined with exempt portions." <u>Mead Data Cent., Inc. v. Dep't of Air Force</u>, 566 F.2d 242, 260 (1977) (emphasis added).  In ascertaining whether otherwise disclosable information is inextricably intertwined with exempt information, it is the agency that has "the burden of demonstrating that [the] withheld documents contain no reasonably segregable factual information."  <u>Mokhiber v. Dep't of the Treasury</u>, 335 F. Supp. 2d 65, 69 (D.D.C. 2004).

Here, the plaintiff alleges that a number of documents contain factual information that should have been disclosed, but were not, and thus the defendant has failed to properly segregate the requested information in violation of the FOIA.  Pl.'s Mem. at 27-29.  Namely, the plaintiff contends (1) that document 74, by its very description in the <u>Vaughn</u> index, contains factual information which is segregable from the exempt deliberative process information, and (2) that fourteen documents appear to set forth the views of some or all of the various outside consultants, and since the views of the outside consultants are not properly withheld under the deliberative process privilege, it is factual information that should be disclosed.  Pl.'s Mem. at 27-29. However, with respect to the plaintiffs's second position, this Court has already held that the views of the non-agency attorneys were properly withheld under the deliberative process privilege.  <u>See</u> <u>supra</u> Section III.C at 23-32.  Thus, because the plaintiff's underlying argument has been rejected, so too must its position on segregability.  Pl.'s Reply at 19 n.11.  Moreover, the

plaintiff's first segregability argument is also without merit.  The adequacy of the <u>Vaughn</u> index in regards to the segregability question turns on whether the agency has sufficiently explained why there was no reasonable means of segregating factual material from the claimed privileged material.  "[A]gencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."  <u>Mead Data</u>, 566 F.2d at 261.  For example, factual material which does not bear on policy determinations must be segregated and produced in response to a plaintiff's FOIA requests.  5 U.S.C. § 522(b); <u>see Judicial Watch, Inc. v. Dep't of Justice</u>, 337 F. Supp. 2d 183, 186 (D.D.C. 2004).  Furthermore, the agency must evaluate <u>each</u> document to determine if segregable material can be provided to the requestor.  <u>Kimberlin v. Dep't of Justice</u>, 139 F.3d 944, 950 (D.C. Cir. 1998) ("[n]either the [plaintiff] nor the court . . . is obliged to accept the conclusion without more specification of the types of material in the file."); <u>Krikorian v. Dep't of State</u>, 984 F.2d 461, 466-67 (D.C. Cir. 1993). Moreover, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"  <u>King</u>, 830 F.2d at 224 (quoting <u>Mead Data</u>, 566 F.2d at 251).   The <u>Vaughn</u> index provided by the agency should therefore "specify in detail which portions of the document are disclosable and which are allegedly exempt."  <u>Vaughn</u>, 484 F.2d at 827.

Here, the defendant has provided detailed representations with respect to whether the information contained in document 74 is reasonably segregable.  <u>See</u> Def.'s Reply at 16, Attach. 4 ¶ 9.b.  Specifically, the defendant indicates that document 74 "includes discussions on proposed commission procedures, prosecution strategy, and legal opinions . . . ."  <u>Id.</u>  Admittedly, this

declaration was submitted late in the game, and ideally determinations of nonsegregability should have been made by the defendant for each document in the <u>Vaughn</u> index when it was initially submitted to the Court.  Nonetheless, the Court has now been supplied with a nonconclusory declaration that addresses the matter, and there is no indication that it has been submitted in bad faith.  Accordingly, the defendant has satisfied its obligation under the FOIA to demonstrate nonsegregability.  <u>Public Citizen</u>, 276 F.3d at 645.  As stated earlier, <u>see</u> <u>supra</u> Section III.C.2 at 28-32, the information contained in document 74 implicates the protections afforded by Exemption 5's deliberative process privilege.  Accordingly, this Court finds no merit to the plaintiff's nonsegregability challenge.

**(E)    Adequacy of the Search**

The plaintiff's final argument is that the defendant's search was inadequate.  Pl.'s Mem. at 37-38.  Specifically, the plaintiff notes that the DoD "has neither released nor identified a single document relating to the development of the President's November 13, 2001 Military Order.  All of the released and identified documents concern [the DoD's] implementing orders and instructions."  <u>Id.</u> at 37.  In addition, the plaintiff indicates that documents that have been released refer specifically to other documents that have neither been released nor accounted for in the defendant's <u>Vaughn</u> index.  <u>Id.</u> at 37-38.  It is therefore the plaintiff's position that the defendant's search has been inadequate.  The defendant, on the other hand, takes exception with the plaintiff's position.  The Court previously addressed the legal standard and related arguments earlier in its discussion concerning the plaintiff's allegations of bad faith.  <u>See</u> <u>supra</u> Section III.A at 7-8.  Accordingly, only those matters not previously discussed will be addressed here.  For the following reasons, the Court agrees that the search was adequate.

As support for its position, the defendant relies on the declarations of Christine Ricci, Stewart Aly, Karen Heckler, and Lawrence Horner.  Their declarations reveal that once the DoD received the plaintiff's FOIA request, it was referred to two offices within the Office of the Secretary of Defense — the Correspondence and Directives Division and the Office of the General Counsel.  Ricci Decl. ¶ 4.  The search of these offices produced numerous documents.  Id. ¶¶ 5, 7.  Following the parties' submission of their initial summary judgment motions, the defendant conducted a subsequent search in a number of offices, including the Office of Legal Counsel; the correspondence files of the General Counsel; and the files of the Deputy Secretary of Defense, the Under Secretary of Defense for Policy, the Office of Detainee Affairs, and the Public Inquiries & Analysis Office within the Public Affairs Office.  Id. ¶ 9.  In addition, former employees were asked where responsive documents might be located.  Id.  This new search also applied different search criteria and resulted in thousands of additional documents being discovered.  Id.  The declarations submitted to the Court are detailed, "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched."  Valencia-Lucena, 180 F.3d at 326.  From these declarations, it is clear that the defendant's search was reasonably designed to discover all responsive documents.

The plaintiff argues otherwise, and contends that a reasonable search should have discovered more records.  For example, the plaintiff notes that not "a single document relating to the development of the President's November 13, 2001 Military Order" was discovered.  Pl.'s Mem. at 37.  Moreover, the plaintiff suggests that the some of the released documents indicate the existence of other documents that were neither released nor listed in the Vaughn index.  Pl.'s Mem. at 37-38.  For example, the plaintiff seeks copies of "a draft military commission

36

instruction entitled 'Review of Trials by Military Commissions,'" which was referenced in a number of other released documents, but was not produced or listed in the <u>Vaughn</u> index.  <u>Id.</u>  In addition, the plaintiff challenges the fact that there were no meeting minutes listed in the <u>Vaughn</u> index for a meeting allegedly held between non-agency attorneys and Paul Wolfowitz, the Deputy Secretary of Defense at that time, which was referenced in another released document.  <u>Id.</u> at 38.  These arguments have no merit.  As the Circuit Court has noted, "[t]he issue is <u>not</u> whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate."  <u>Perry</u>, 684 F.2d at 128.  The Court, having already concluded that the search was adequate, must also conclude that the plaintiff's argument that more documents should have been found is of no moment.  Moreover, the plaintiff has failed to provide this Court with any indication that other offices should have been searched, or that other search terms should have been used.  Rather, it simply asserts that the search was inadequate because an insufficient number of documents were discovered.  This conclusory assertion is inadequate to rebut the detailed declarations submitted by the defendant.[14]

## IV.   Conclusion

This Court is troubled by the government's failure to timely and adequately respond to the plaintiff's FOIA request.  But for the filing of this action, the DoD may never have complied with

---

[14]  In the plaintiff's reply brief, it questions for the first time whether the database of incoming and outgoing official correspondence from the Secretary and Deputy Secretary of Defense were searched with appropriate key words following the expansion of the defendant's initial search for responsive documents.  Pl.'s Mem. at 19.  Moreover, the plaintiff suggests that the defendant is required to explicitly describe what documents are contained in that database, and that responsive documents therein were included in the <u>Vaughn</u> index.  <u>Id.</u>  This argument has no merit.  The database was searched with very broad terms including the terms "military commission" and "military orders," Pl.'s Opp'n, Ex. 6 ¶ 3.  The plaintiff does not suggest that these terms were to narrow, nor does the plaintiff provide other terms it believes would have been more appropriate.  And this Court can think of none.  What the plaintiff is advancing is nothing more than pure speculation.

its obligations under the FOIA.  "The basic purpose of [the] FOIA is to ensure an informed

citizenry, vital to the functioning of a democratic society, needed to check against corruption and

to hold the governors accountable to the governed."  NLRB v. Robbins Tire & Rubber Co., 437

U.S. 214, 242 (1978).  Here, the DoD acted only with the prodding brought about by this

litigation.  This is not how a government agency should comply with its statutory obligations.

Nevertheless, the DoD has now responded to the plaintiff's FOIA request, as it should have done

earlier, and as this Court has found, the defendant has now also adequately searched for

responsive documents, a search that was not conducted in bad faith.  Moreover, the defendant has

properly withheld documents pursuant to Exemption 5.  However, the documents withheld

pursuant to 10 U.S.C. § 130c have not been properly designated as exempt from public disclosure

by the Secretary, and thus the defendant has not properly invoked Exemption 3.  Nevertheless, this

Court will afford the defendant the opportunity to correct its flawed assertion of Exemption 3, and

permit it to refile a renewed summary judgment motion before definitively concluding that

Exemption 3 has been improperly invoked.

      **SO ORDERED** this day of 16th day of December, 2005.[15]


          REGGIE B. WALTON
          United States District Judge


---

[15] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.